Please be seated, thank you. Please call the next case. 313-249 Sherry Edgman v. Methodist Medical Center Counsel, you may proceed at your... You may come forward to begin your argument. Would you please state your name? I'm not sure this is being recorded. May it please the Court. Again, good morning, Your Honor. My name is Hania Sohail, and I'm here on behalf of the appellant, the employee, Sherry Edgman. Your Honors, before I begin, I would respectfully request five minutes of rebuttal time. You're allowed the five minutes in reply. Today I'm here to argue a repetitive trauma, mainly a carpal tunnel case. Repetitive trauma cases lately have been denied by Illinois Workers' Compensation Commission. They have been denied mainly due to various political reasons. However, without getting into those complex political reasons, I'm requesting today that this Court reverse the decision of Illinois Workers' Compensation Commission due to two issues that are presented for this reviewing court today. The first issue that is presented in front of this reviewing court is whether the decision of Illinois Workers' Compensation Commission constitutes an errant law, mainly in finding that a Petrillo violation occurred and opinion of Dr. Howder was against Petrillo violation. Would you agree with this? If we were to affirm the Commission's or find that they ruled correctly on the causation issue, the Petrillo violation would fall, correct? No, Your Honor. No? Why not? Because they have a second issue, too, Your Honor. Today you find that a Petrillo violation occurred. I'm saying if we find that the Commission was correct on causation, then we don't have to address the Petrillo violation. Your Honor, I would disagree respectfully if you do, because Commission considered opinion of Dr. Howder, which was in violation of Petrillo doctrine. So if you take out the opinion of Dr. Howder, then you're – and I'll get into this into my second argument. I'm getting ahead of myself. I see what you're saying. There's another theory that would render it moot, but go ahead with your argument. Your Honor, the Petrillo violation is a question of law, and for that reason, the standard of review for this reviewing court is de novo. The second issue presented is whether the decision of the Illinois Workers' Compensation Commission is against the manifest rate of the evidence. Briefly going into the facts here, the employee at the time of the arbitration testified that she has worked for the employer for 33 years. It was also stipulated at the time of the arbitration that prior – six years prior to the alleged date of accident, the employee was also working for Walmart 20 hours a week. The employee title at the employer was that of a document – if she was a document capture technician. The job duties of the employee at the employer included typing. It included hole punching. It included medical transcription, lifting, gripping, manipulating files. The employer also introduced its job description at the time of the arbitration, and even the employer job description stated, able to do grist and grasp, able to lift 10 pounds forceful weight. Can you address one issue? It would seem to me that the commission found, although there were – you had two experts testifying in favor of causation. Respondent had experts against it. The commission only found that in spite of the written job descriptions entered into evidence by claimant and respondent, none of the doctors – none of the doctors who saw the claimant had sufficient evidence regarding her work activities to form a reliable causation opinion, quote, unquote. So this case, in their minds, turned on a failure of proof. Correct? Your Honor, the commission also noted – And that's what they said. That's what they said, yes, Your Honor. So where in the evidence – why did they go wrong in that decision? Your Honor, they are going off in their decision based on Dr. Howder's testimony. They are saying that Dr. Howder was one doctor among all the doctors, among the four doctors that opined on causation, and Dr. Howder had a better, a more thorough understanding of Petitioner's job. Well, they rejected in terms of the causation. It didn't find that any of them, really carefully including Howder, gave a reliable opinion. They rejected all of them. Ultimately, they found that none of the doctors gave a correct opinion, right? I would disagree with that, Your Honor, and I would again say that the commission decision says that among the doctors, they found Dr. Howder to be more credible, to have a thorough understanding. When Petitioner was doing her job duties, she started experiencing problems with her hands. She went to see Dr. Dong, who referred her to Dr. Howder. Dr. Howder was of the opinion that the Petitioner's job duties were not related to her work activities. Petitioner actually, I misspoke, Your Honors. Dr. Dong referred her to Dr. Garce, not to Dr. Howder. Dr. Garce was of the opinion that Petitioner's job duties were related to the work activities that the Petitioner did, the employee did at Methodist Medical Center. Dr. Garce recommended surgical intervention for both her wrists. However, shortly after Dr. Garce's recommendation, the employee was terminated and she had no means of paying for the treatment. The Petitioner or the employee then saw Dr. Hoffman, who referred her to Dr. Rohde. Dr. Rohde saw the employee without seeking preauthorization and also concurred with the opinion of Dr. Garce that the Petitioner suffered from bilateral carpal tunnel syndrome and that also this bilateral carpal tunnel syndrome was related to the work activities that the employee did at Methodist Medical Center. One other doctor the employee saw was Dr. Cohen. Dr. Cohen was a Section 12 independent medical examiner. He was, he had the diagnosis of bilateral carpal tunnel syndrome. However, he had some doubt as to the degree of carpal tunnel syndrome experienced by the employee. Regardless of the diagnosis, he opined, just like Dr. Howder, that the condition was not related to the work activities. Just to summarize it a little bit, the Petitioner saw four specialists. I think that I slowed you down a little bit. And let's get to the meat of this, which Justice Hudson asked you. I'm going to read you a line from the opinion. It says, the commission finds that in spite of the written job description entered into evidence by Petitioner in response, none of the doctors who saw the Petitioner had sufficient evidence regarding her work activities to form a reliable causation opinion. That includes Dr. Howder. That's every doctor that saw this woman. And if there is absolutely no evidence going to the issue of causation, what's wrong with the commission's decision? Judge, whether they're talking about reliable or information about the job duties, again, if you do take the opinion of Dr. Howder based on Petitioner's violation, and Dr. Coleman, No, you didn't understand my question. They said none of them had sufficient evidence regarding her activities to form a reliable causation opinion. That includes Howder. That includes Howder. None of them. They threw out every doctor that testified on causation. Every one of them. Then, Your Honor, I would say that would then go against the manifest rate of the evidence, because if you read the deposition transcript of both Dr. Garst and Dr. Rohde, they had sufficient information. It was the same. The job duties that they were aware about were the same as what the Petitioner testified at the time of the arbitration. See, that's what your whole case is about. That's what you should be arguing here, just what you're saying. Going back to my first argument again. Because that's your argument. That's why it's an error. The commission's decision is an error. The commission's decision is an error. Again, my argument is, first, because of Petitfiller violation. Now, let's leave that alone. You've got to go first. Your second argument is your first argument. Going into my second argument, Your Honors, the commission decision was against the manifest base of the evidence. As justices point out in this case, that even if the commission is finding that they didn't have sufficient information, that's not true, because the Petitioner testified to her job duties. Dr. Rohde was aware of the gripping nature and the grasping nature of the job duties that the Petitioner did. Dr. Garst was aware of the typing duties that the Petitioner did. For that reason, if the commission is saying that no doctor had reliable information, then that's incorrect, and that is against manifest rate of the evidence. The other, in relying, even though the commission didn't rely too much on the decision of Dr. Cohan, but still, it did a little bit in finding and going with Dr. Cohan's opinion that there was no causation, that was incorrect, because Dr. Cohan's opinion was based on an assumption. Dr. Cohan opined that there is no association between keyboarding and causal tunnel, assuming the fact that the ergonomics is correct. And he stated, I believe this is the assumption here. The ergonomics, the assumption that the ergonomics were correct were nowhere mentioned at the time of the arbitration. There was no testimony presented whatsoever that stated that the ergonomics was, in fact, correct. In fact, the commission in its own decision stated that also significance is a lack of evidence pertaining to the ergonomics of Petitioner's workstation. Dr. Cohan's opinion in this case was based on, again, information that was not proven at the time of the arbitration. Dr. Howder's opinion, again, it is our argument, was in violation of the Petrillo Doctrine. Just to briefly touch upon my first argument, Dr. Howder's opinion was in violation of the Petrillo Doctrine. I don't think you understand. Once the commission said they didn't rely on Dr. Howder's opinion, your Petrillo argument is moot. It's meaningless. It doesn't make any difference to the outcome of this case. The commission said they didn't rely on Howder. If you have a Petrillo violation and they did rely on Howder, then in that particular case we have something to talk about. But if the commission did not rely on his opinion and they said they did not, then in that particular case it's a moot issue. It's not even worth wasting whatever little time you have left on it. Then, Your Honor, I mean, whose commission did the – whose decision or whose opinion did the commission rely on? If it didn't rely on Dr. Howder's opinion – It didn't rely on nobody. They didn't rely on nobody. They denied their benefits. It was like the case was filed and never argued. But that would be, again, against the manifest rate of the evidence. There was good testimony presented at the time of the arbitration. There was testimony presented on the time of the arbitration regarding Dr. Rohde and also from Dr. Cohen and from Dr. Garst. Dr. Garst, in his deposition, testified, it sounds like she had a job that was heavy with data entry. She says that she did those five days a week, full time, and more than half the day, by her account, was spent doing data entry. The rest of it was filing and pushing cards. And I told her that I thought her carpal tunnel was significantly related to her occupation. If the commission is finding that there was no evidence and no doctor had reliable testimony, then that is against the evidence. Here's what I think is lacking here. They didn't rule on the merits of the testimony. They didn't rule on the qualifications of the doctors or anything to do with the merits. They found there was insufficient evidence given to them to determine her work activities. That's it. They're saying you didn't give us enough information for us to make a reliable determination on what the woman's job activities were. Period. It's got nothing to do with manifest weight at that point. It has nothing to do with what expert is more accurate. They're saying we can't base a decision on the information that was provided to us. That's what they said. And we disagree, Your Honor. We, again, believe that there was enough evidence presented. At the time of the arbitration, the job duties the petitioner testified herself. The job duties that Dr. Garst testified for the petitioner and opined on causation. Dr. Brody also – Did you just start out quoting him where he said – did he actually say it sounds like to me? Did you actually say that? Did you say the word sounds? What did you say there? The Dr. Garst testimony was I told her that I thought her carpal tunnel was significantly related to her occupation. Did you use the word sounds like? I did. That's what Dr. Garst testified. How did he start out his opinion? It sounds like. Sounds like? Correct. And even after Dr. Garst was presented the job description Dr. Garst opined, the job description that you provided me right now, I think, does support what she told me in the office. And so my opinion would remain the same that it could or might have caused carpal tunnel syndrome. Besides Dr. Garst, Dr. Brody, again, had the same understanding of petitioner's job duties. Dr. Brody also testified that I believe that 33 years of exposure to repetitive positional changes required to manipulate a hospital charting system meets my level of causation or permanent aggravation of the condition of carpal tunnel or cubital tunnel syndrome. Again, there was enough evidence presented at the time of the arbitration, mainly the job description that the petitioner testified, the job duties that the respondent themself offered, the deposition of Dr. Brody and the patient chart of Dr. Brody, and the deposition of Dr. Garst and the medical records of Dr. Garst. Therefore, Your Honor, for the mentioned reasons, we request that the decision of Illinois Records Compensation Commission should be reversed, in this case be remanded back to the commission for further proceedings. Thank you, Your Honor. Thank you, Counsel. May it please the Court. Counsel, my name is Steve Kelly, here on behalf of Methodist Hospital. It is our position that the decision is not against the manifest way of the evidence. If I can address the arguments that were just proposed here to counsel, I'll try to do that. Could you just, I think finally we got to the nub of the case here. She's saying there's enough there. There is sufficient evidence, description to form a reliable causation opinion. Why do you agree with the commission when they said we didn't have enough information? Like other Workers' Compensation Commission cases, the depositions of the doctors are taken before we proceed to hearing. And I think what happened in this case is the fact that the experts testified before the hearing, and you look at their direct testimony on direct examination, you look at their testimony on cross-examination, their opinions in themselves cross them out. For example, Dr. Garst testified on direct examination that he felt there could be a work-related condition, but he testified that was based off the history that she did data entry more than five hours a day. That's before the trial started. On cross-examination, Dr. Garst testified that it may not be related upon giving him questions about the case. Dr. Rohde. Dr. Rohde testified in the case on direct examination, yeah, I think this could be work-related, but on cross-examination, Dr. Rohde testified he thought she was a secretary. He had the job, the wrong job title. He admitted that. He admitted that. I think that's very significant in the fact of what he knows and doesn't know, and how much data entry she does and doesn't do. Now, once again, the second expert testifies before we go to trial. Dr. Cohen testifies, our independent medical examiner, on direct examination. He, in his opinion, does not believe it's work-related. On cross-examination, his opinion is watered down by the questions posed to him by counsel. Dr. Hodder, whether his testimony is thrown out by the commission or not, for the purposes of this part of this argument, let's assume it's in evidence. He says he does not believe it's a work-related condition. He says he's familiar with the work activities. So then we go to trial. Ms. Hagman testifies. And she doesn't provide the information that's in that job description to the arbitrator. If you look at her testimony, she says, I was not doing data entry up to five hours a day. She says that her job was winding down in March of year 2008. In fact, the hospital is going paperless. And she says she was worried about losing her jobs. When she goes to Dr. Truong for the EMG in January 2008, two months prior to this alleged accident date, she says her job duties are slowing down and she's afraid she's losing her job. On cross-examination during trial, she said, my jobs vary. The amount of times I pull the files vary. The amount of times I punch papers vary. The amount of times that I do work at this facility or at this employer varies. So now you have the testimony put on paper, and the commission and the arbitrator have to go back and say, does that testimony match the experts? And it didn't. Ms. Hagman failed to meet her burden. It's her burden to establish that there's a causal relationship between the work activities and the condition of well-being. And if you look at her testimony time at trial, that's her time. And she already prepared a job description. She already given history to four different doctors. Her time at trial to confirm that that's her work activities was when she went on the stand. And what happened? She said, my jobs vary. It's not very hand-intensive. In fact, I was afraid I was going to lose my job. I was getting laid off. So it didn't match up. Then you have the outside conditions, such as the hypothyroidism. That was evidence in the case that she had that condition. And all the doctors agreed that could be a cause of this condition. So it's our position in this case that she failed to meet her burden in establishing her case in chief. There you have proof, basically, as the commission found. Exactly. They may not have worded it beautifully, and they may not have said it that, hey, look, we have problems here with the experts, because on one, during direct examination, they say there is a relationship, or they say there's no relationship. And then on cross, they say the exact opposite upon questioning of the attorneys. The problem is, is when you have a workers' compensation case and the experts have already testified, that should be a blueprint to the person who has the burden of proof of what they have to do at time of trial. They have the expert's testimony. So if that testimony of that petitioner fits that blueprint or fits the opinions of the expert, you've proved your case. But it wasn't done here. I asked the court to look at the testimony of Ms. Hagman on cross-examination. She said her job duties varied. To every question I asked her about the specific job duties. So if we were to agree with the commission on causation, would you agree that the alleged Petrillo violation is moved on? Is it not? I agree with that, and I don't want to argue that, but I think it's very important for the court. I was the attorney, and I've never been alleged of violating Petrillo. In 24 years of practicing law, I've taken 1,000 depositions of these experts. There is a stipulation on the record that Dr. Hodder is not a treating physician, that he is the agent of Methodist. In fact, we bifurcated that deposition. And in fact, that deposition was taken because counsel objected to Dr. Hodder's records as an agent of Methodist. So we went into the first deposition, and Dr. Hodder, why, I don't know. Dr. Hodder testified, I'm a treating physician. It's on page 8. And all of a sudden, all the red flags went up. And we stopped the deposition. And Dr. Hodder said he wanted to look at a document that Ms. Hagman signed to see whether or not there was a physician-patient relationship versus an agent. We came back, and Mr. Strong and I sat there and discussed this on the record. And there's a stipulation on the record that for the purposes of this case, and we said this case only, Dr. Hodder was an agent of my client and was not a treating physician, and we proceeded on with that deposition. So I was surprised when we got the documents on appeal for the commission in the brief that they said, oh, wait a minute. Now there's a patrol violation, and we want that thrown out. You can't stipulate to that and then later raise it as an issue on appeal. So we respectfully request that this commission affirm the decision and find that they failed to meet their burden of proof, and the decision of the commission is not against the manifest way of the evidence. Thank you. Thank you, counsel. Counsel, you may reply. Your Honors, again, going into the decision of the commission and finding that they did not find any reliable testimony regarding petitioners or employees' job duties, that is against the manifest way of the evidence. Counsel here talked about that the petitioner at the time of the arbitration testified to various things she did throughout the day. We are not objecting to that. We are agreeing with that. She did that. However, the doctors that she saw, again, mainly Dr. Roddy and Dr. Garst, they had an understanding, a general understanding of what she did on a daily basis. They might not have known how many times she spent on each activity, but they know throughout what kind of activities she did. Your Honors, you see these workman's compromise cases all the time. Most doctors do not know how many times did she type, how many times did she punctual. Was it for five minutes? Was it for ten minutes? They don't know that. The doctors don't take the time to ask the petitioner that. All they know is a general idea, and they make their opinion on causation based on that general idea. And, again, in this case, both Dr. Roddy and Dr. Garst know what she did. They knew that she was manipulating medical charts. Both Dr. Roddy and Dr. Garst are doctors. They see people manipulating medical charts. They know the kind of postural movements are involved in and positional changes are involved in manipulating patient charts or in typing. And, again, for that reason, Your Honors, we believe that there was enough evidence from which it could have been inferred or from which the commission should have found that the opinions of Dr. Roddy and Dr. Garst contained enough information for the commission to determine a causation opinion. Therefore, again, Your Honor, we respectfully request this court's reverse and remand the decision of Illinois Workers' Compensation Commission as affirmed by the Circuit Court. Thank you. Thank you, counsel, both for your arguments. This matter will be taken under advisement. A written disposition shall issue. Please call the roll.